# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                        CRIMINAL ACTION NO. 2:08-cr-169

KEVIN LEE LEWIS,

                Defendant.

## MEMORANDUM OPINION AND JUDGMENT ORDER

On November 1, 2010, pursuant to the Fair Sentencing Act of 2010, the United States Sentencing Guidelines were amended resulting in reductions in the guidelines in Section 2D1.1 for cocaine base. These temporary, emergency amendments to the Guidelines took effect on November 1, 2010. Permanent amendments implementing the Act were promulgated on April 6, 2011, with an effective date of November 1, 2011. Subsequently, the Sentencing Commission voted to give retroactive effect to the permanent amendments. Pursuant to a Standing Order entered on October 7, 2011, this case was designated to proceed under the Standard Procedure. (Document 67).

The Court has carefully reviewed the original Presentence Investigation Report (PSI), original Judgment and Commitment Order and Statement of Reasons, the plea agreement, the addendum to the PSI from the Probation Office, and any materials submitted by the parties on this issue. The Court has also considered the applicable factors under 18 U.S.C. § 3553(a), consistent with § 3582(c)(2), and public safety.

I.

Defendant pled guilty to Counts One and Two of a three-count indictment. As to Count One, possession with the intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1), Defendant's original Presentence Investigation Report attributed to him a total of 208.5 grams of cocaine base, which resulted in a base offense level of thirty-two (32). He received a three-level reduction for acceptance of responsibility, but no other sentencing guideline enhancements or reductions were applied. With a criminal history category I, his original guideline range was eighty-seven to one hundred eight (87 to 108) months. However, the sentencing court determined that the Guidelines' imposition of a 100 to 1 quantity ratio of crack cocaine to powder cocaine was unjust and, instead, applied a 20 to 1 ratio. As a result of the application of the 20 to 1 ratio, the Defendant's base offense level became thirty (30) and his total offense level was determined to be twenty-seven (27). Defendant's advisory guideline range became seventy to eighty-seven (70 to 87) months. The Court imposed a term of imprisonment at the high-end of the guideline range of eighty-seven (87) months. Defendant was also sentenced to a consecutive term of sixty (60) months of imprisonment for knowingly carrying a firearm during and in relation to a drug trafficking offense, as charged in Count Two of the Indictment. Defendant's term of imprisonment for Count Two is not affected by the 2011 Amendment, and remains without modification.

Applying the 2011 amendments to the Guidelines, Defendant's base offense level is thirty (30) and his total offense level is twenty-seven (27). Given a total offense level of twenty seven and a criminal history category of I, Defendant's amended guideline range is seventy to eighty-seven

(70 to 87 month).[1] The Court finds that Defendant is eligible for a sentence reduction. While the parties are in agreement that Defendant is eligible for a reduction, their opinions differ on whether a reduction is warranted and on the extent of any reduction. (Documents 68 - 70).

## II.

In the Government's initial response to the Court's Standard Procedure Order, the Government asserts its "agree[ment] with the United States Probation Office's conclusion that defendant is eligible for a reduced sentence[,]" and observes that Defendant's original sentence is within the recalculated guideline sentencing range. However, the Government did not specifically address whether Defendant should receive a reduction, and, if so, the extent of the reduction. Response of the United States to Court Order Regarding Defendant's Motion Pursuant to 18 U.S.C. Section 3582(c)(2) (Document 68) at 1; United States['] Reply Regarding 18 U.S.C. Section 3582 (c)(2) (Document 70) at 1 (acknowledgment that it did not address "factors that counsel against a sentence reduction.") Instead, the Government asserts that "despite defendant's eligibility for a reduced sentence, any reduction is limited by the consecutive mandatory minimum [sixty] month sentence imposed for Count Two of the Indictment." *Id*. at 1-2.

Defendant, in response, contends that he is eligible for a reduction and requests that his sentence be reduced to seventy (70) months.[2] Memorandum of Defendant (Document 69) at 1. Defendant, through counsel, advises that he has completed the forty (40) hour drug education

---

[1] The Court observes that this amended guideline range is the same range established by the sentencing court's use of the 20 to 1 cocaine base to powder cocaine ratio.

[2] Defendant erroneously asserts that he was sentenced to a term of imprisonment "at the bottom of the applicable Guideline range, at sentencing." (Document 69 at 2.) Defendant does not take into account the sentencing court's imposition of a guideline range based on the 20 to 1 ratio were seventy months is the "bottom of the applicable guideline range."

program, complied with the DNA collection program, and is currently participating in the GED and Inmate Financial Responsibility Programs. *Id*. at 2. He acknowledges that he "has had some incidents while incarcerated" but contends that they have been addressed administratively by the prison institution and "have no bearing on the question of whether [he] should receive a reduced sentence." *Id*.

Thereafter, the Government filed a reply memorandum, (Document 70), wherein Counsel for the Government "objects to the sentence reduction requested by defendant" and argues that Defendant's "conduct before, during, and after his offenses of conviction" supports a finding that no reduction is warranted. The Government asserts that the sentencing court's original sentence remains "appropriate" based on the court's consideration of "defendant's history of violence, possession of weapons, drug use and sales, and creating safety hazards while detained." *Id*. at 1. Further, the Government highlights Defendant's offense and relevant conduct as set forth in Defendant's Presentence Investigation Report (*id*. at 2), argues that his post-sentencing participation in prison programs are "activities that directly benefit him personally" and "activities over which he has no control" (*id*. at 3), and contends that Defendant's post-sentencing misconduct in prison is much like his pre-sentencing detention misconduct in that "he continues to engage in conduct that creates safety and security hazards for prison officials[.]" *Id*. Counsel for the Government argues that the sentencing court has already adjusted Defendant's sentencing calculations to address the disparity between cocaine and cocaine base, in its imposition of a 20 to 1 ratio, and no further reduction is warranted. *Id*.

In response to the Government's reply, Defendant, through counsel, filed the Supplemental Memorandum of Defendant (Document 73). Defendant urges the Court to find that the arguments

presented by the Government's reply do not support denying Defendant a reduced sentence. Defendant argues that while his offense and relevant conduct are not in dispute, the conduct is reflected by the guideline calculations which have been lowered. Additionally, Defendant contends that the Government, at sentencing, did not object to the drug weight attributed to Defendant or the lack of an enhancement for obstruction of justice in light of Defendant's "struggle with police" when he was apprehended. Defendant argues that "[t]o the extent that the Government contends that the advisory Guideline Range does not accurately reflect [his] conduct in this case, the opportunity to address that inaccuracy is long past." *Id*. at 2. Additionally, Defendant contends that the Government disregards the positive behavior he has exhibited in prison with respect to the educational and substance abuse programs. Defendant argues that his participation in these programs demonstrates his growth since the date of his Presentence Investigation Report when he indicated that he was not interested in drug treatment and that his success will benefit society. Further, Defendant contends that post-sentencing infractions should not warrant a *per se* denial of a reduced sentence. Finally, with respect to the Government's assertion that Defendant's sentence reflects a rejection of the disparity between powder cocaine and cocaine base, Defendant argues that the Government references a sealed statement of reasons, a document to which his counsel does not have access.[3]

Upon receipt of the sentencing transcript, counsel for Defendant filed the Second Supplemental Memorandum of Defendant (Document 77.) In this memorandum, Defendant renews

---

[3] Defendant requests an opportunity to obtain the sealed document and a transcript of the sentencing proceedings "in order to have a full picture of the proceedings." *Id*. at 4. On April 13, 2012, the Court construed Defendant's Supplemental Memorandum as a motion seeking relief of an enlargement of time in which to secure sentencing transcripts and other documents. The Court granted the motion to allow counsel to procure the necessary materials.

his request for a sentence reduction to seventy (70) months on Count One. In support thereof, Defendant argues that this Court should discount the Government's argument that the sentencing court imposed a sentence that already addressed the disparity between cocaine base and powder cocaine. Defendant contends that "it is unclear that the court factored that disparity into its decision as to the appropriate sentence in this case." *Id*. at 1. This Court has reviewed the transcript from Defendant's March 12, 2009 sentencing hearing and finds that there was nothing ambiguous about the court's finding with respect to the drug disparity and its determination of Defendant's sentence. The court began its discussion of Defendant's sentence by stating the term of imprisonment imposed for both Count One and Two in total. The court then discussed its consideration of Defendant's offense and relevant conduct, his history and characteristics, previous interactions with law enforcement and his consistent involvement with drugs and firearms. The sentencing judge finished his explanation of the sentence with statements about his policy disagreement with the disparity between crack cocaine and powder cocaine and his application of the 20 to 1 ratio. The judge explained how he derived a term of imprisonment of 147 months. (*See* Sentencing Hearing Tr. (Document 76) at 76.) Specifically, the Court stated:

> Here if I convert the crack cocaine attributable to the defendant in this case from 208.55 grams, I multiply it by 20, that would amount to 4.171 kilograms of powder cocaine and an offense level of 30 under 2D1.1.
> Reducing that level by three points for acceptance of responsibility would have resulted in an adjusted offense level of 27 which would carry a range of imprisonment of 87 months.
>
> I have sentenced the defendant to the high end of that guideline range as reduced, that is, to the 87 months, and have added the 60 months to the total required for violating 18 United States Code, Section 924(c) for a total term of imprisonment of 147. I have not actually varied from my original calculation of the applicable guidelines, but

> I have – I got there by means that I deem fairer and more just, and that is by applying a different multiplier.

*Id*. at 54. It is apparent to this Court that the sentencing court fully considered the advisory guideline range that resulted from the use of a 20 to 1 ratio and determined that a sentence at the top of that range was warranted. It is not lost on this Court that a term of imprisonment of eighty-seven (87) months is also the bottom of the range calculated prior to the application of the 20 to 1 ratio. However, that fact does not interject any confusion about whether the court "factored th[e] disparity into its decision" where the Court's explanation of the sentence clearly indicates that it did.

*III.*

The Court, in its review of the Presentence Investigation Report, finds that at the time of Defendant's sentencing, no criminal convictions were located for this Defendant. Therefore, his criminal history category was determined to be I. A June 2008 charge for simple possession of heroin was pending at the time of his sentencing.

The offense and relevant conduct in the instant case revealed that at the time of his arrest on October 7, 2007, Defendant threw out of the window of an apartment a bag containing 8.56 grams of cocaine base, a TEC-9, nine millimeter pistol, and a Davis Industries P-32, 32 caliber pistol. In July 2006, Defendant was found visiting an apartment where firearms and drugs were found. He claimed ownership of one of the recovered guns. In June 2007, Defendant discharged a firearm in an apartment in St. Albans, West Virginia, and admitted ownership of crack cocaine found within an apartment Defendant visited. In November 2007, Defendant was found in a motel located in Jefferson, West Virginia, in possession of a quantity of suspected cocaine base and a loaded 22-caliber handgun. On February 9, 2008, Defendant was found asleep inside a vehicle which was reported stolen, at which time he possessed 38.54 grams of cocaine base, "user amounts" of

marijuana and alprazolam. Defendant resisted the officers and had to be restrained by the use of a stun gun. He made statements about the source of the cocaine base and the amounts he had previously sold. As referenced above, Defendant was attributed responsibility for 208.5 grams of cocaine base determined from his own statements and laboratory analysis as offense and relevant conduct. At the time of his sentencing, Defendant reported that he was raised by his mother and maternal grandparents and never knew his father. His mother, who abused alcohol and drugs, left him and his siblings when he was seven after her boyfriend killed a man in their home. Defendant has no children. He dropped out of high school after the ninth grade and has no other education or training. He began using drugs when he was eighteen by abusing marijuana daily and Xanax every other day. Defendant also reported that he was not interested in drug treatment and that he had been employed in the fast food industry and in a gift shop. The record reveals that while detained pending sentencing in this matter, Defendant was cited twelve times for misconduct at the South Central Regional Jail ("SCRJ") which began three days after his guilty plea in this matter. His misconduct included: a threat to SCRJ staff, hiding a plastic spoon in his cell, five separate instances of destruction of property, "acting out" by asserting that a SCRJ staff member called him a racial epithet, throwing liquid on another inmate, keeping plastic pieces from a razor, interfering with the inmate count and attempting to instigate the attack of another inmate who was severely beaten. During his period of prison incarceration, the Court observes that Defendant has been sanctioned for being found in an unauthorized area, being insolent to a staff member, destruction of property, refusing to obey an order and three separate instances of refusing a work assignment.

Based on the foregoing, the Court finds that the instant offense and relevant conduct reveal, Defendant was accountable for a significant quantity of cocaine base, he seemingly had a pattern

of possessing firearms and drugs at the same time, his pre and post-sentencing confinement misconduct demonstrate Defendant's lack of respect for authority and a failure to conform his behavior to the rules of the institution to which he is housed, and he has been cited as being involved in conduct that lead to an injury of another inmate and threatened the safety of detention center staff. While these instances of misconduct weigh in favor of a finding that Defendant poses a danger to a person or community, the Court has considered that Defendant's post-sentencing misconduct does not appear to have involved any violence and last occurred on August 20, 2010, nearly two years ago. The Court has also considered that Defendant is now interested in drug treatment, which is a departure from his previous statements about such assistance. He has now completed the Bureau of Prisons' forty-hour drug program.

After careful consideration of the foregoing, the Court finds that Defendant is eligible for a sentence reduction. The Court **ORDERS**, as a result of Amendment 750, that Defendant's base offense level is thirty. Given a total offense level of twenty seven and a criminal history category of I, Defendant's amended guideline range is seventy to eighty-seven (70 to 87) months. While the Court finds that a reduction is appropriate in this case, the Court declines Defendant's invitation to reduce his sentence by seventeen months to the bottom of the guideline range  The Court finds that the Section 3553(a) factors do not warrant such a reduction. Therefore, the Court does hereby **ORDER** that Defendant's previous sentence be reduced to a term of **eighty (80) months** of imprisonment within the amended guideline range, with credit for time served to date. This Order is subject to the prohibition contained within U.S.S.G. §1B1.10(b)(2)(C).

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: August 1, 2012

*Irene C. Berger*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA